# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | |
|---|---|
| SETH AUSTIN | CASE NO. 2:19-CV-01357 |
| VERSUS | JUDGE JAMES D. CAIN, JR. |
| TONY MANCUSO ET AL | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 37] filed by defendants Tony Mancuso, Ina Breaux, and LaJuana Fruge, seeking dismissal of plaintiff's civil rights suit. Plaintiff opposes the motion. Doc. 39.

## I.
### BACKGROUND

This suit arises from injuries that plaintiff, Seth Austin, sustained at the Calcasieu Sheriff's Prison and from the medical care he received as a result. Austin, who was then an inmate on pretrial detention, was involved in an altercation with another inmate on September 2, 2018, at approximately 11:20 am. Doc. 37, att. 3, p. 1. During this altercation Austin was struck multiple times in the back of the head, rendering him unconscious. *Id.* Nurse Ina Breaux arrived to examine Austin at approximately 12:00 pm and found him disoriented, confused, and bleeding from the nose, though able to sit and stand as well as give his name and day of the week. *Id.* at 2. Breaux was informed that Austin had fallen and struck the back of his head. *Id.* He was taken to medical in a wheelchair, where he was

found to be more alert. *Id.* An exam revealed a raised area in the back of his head and stable vitals, and he complained of a headache. *Id.* Breaux ordered ice therapy and Tylenol. *Id.*

At 3:30 pm, Nurse LaJuana Fruge was called to examine Austin after he vomited in his cell. *Id.* at 3. She noted dark, clotted blood in his vomit, that his pupils were normal, and that he was able to follow her finger with his eyes with no difficulty. *Id.* She then took him to medical for evaluation. *Id.* During this time Austin also blew his nose and Fruge observed blood on the tissue, which led her to conclude that the bloody vomit was caused by Austin swallowing blood from a nosebleed. *Id.* Fruge noted that she would continue to monitor Austin but no further treatment was ordered. *Id.*

At 7:15 the next morning, multiple inmates voiced concerns about Austin. *Id.* He was found lying still in his cell with shallow respirations and unresponsive to verbal or touch stimuli, with only slight movement of his head when an ammonia inhalant was passed under his nose. *Id.* It was noted that he had not eaten or drank since the previous day, that he had continued to vomit blood, and that there was also a small area of green liquid near his head. *Id.* On exam it was discovered that his pupils were nonreactive to light and his blood pressure was elevated to 182/72. *Id.* Austin was transported by ambulance to a local hospital, where he was diagnosed with a skull fracture and subdural hematoma, and then transferred to a different hospital in Lafayette, Louisiana, where he underwent an emergency craniotomy and was placed on a ventilator. *Id.*

Austin survived his injuries and filed suit in the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana, on August 30, 2019. Doc. 1, att. 5. As defendants he named Fruge, Breaux, and Sheriff Tony Mancuso in his capacity as Sheriff of Calcasieu Parish.

*Id.* He alleged that defendants' negligence with respect to his medical treatment had caused his injuries and entitled him to compensatory damages for his past, present, and future treatment, pain and suffering, and loss of enjoyment of life. *Id.* at ¶¶ 5–6, 11. He further alleged that defendants' actions amounted to deliberate indifference in violation of the Eighth Amendment, entitling him to punitive damages and attorney fees under 42 U.S.C. § 1983. *Id.* at ¶¶ 7–10, 12.

Defendants now move for summary judgment on petitioner's claims, asserting that he cannot meet the high bar for establishing a constitutional violation. Doc. 37. Plaintiffs oppose the motion, arguing that record evidence shows at least a genuine issue of fact as to whether defendants wantonly disregarded his medical needs. Doc. 39.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v.*

*Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
### LAW & APPLICATION

### A. Constitutional Claims

Because plaintiff was a pretrial detainee, his medical care claims arise under the Fourteenth Amendment but his rights are "at least as great as the Eighth Amendment's protections available to a convicted prisoner." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1994) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). "Constitutional challenges by pretrial detainees may be brought under two alternative theories: as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare,* 74 F.3d at 644–45). The claim here implicates the acts or omissions of individual employees at the jail, rather than the jail's overall procedures for handling head injuries, and is

therefore properly characterized as the former. *Cf. id.* at 449–53 (claim properly characterized as one for conditions of confinement rather than acts or omissions, because it did "not implicate the acts or omissions of individuals but the jail's system of providing medical care to inmates with chronic illnesses"); *see also Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997) (en banc) ("[W]here the complained-of harm is a particular act or omission of one or more officials, the action is characterized properly as an 'episodic act or omission' case . . . ."). This applies even where the detainee "complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *Scott*, 114 F.3d at 53.

Under an acts or omissions claim, "[t]he Fourteenth Amendment guarantees pretrial detainees a right not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001)). To prevail on a deliberate indifference claim, a plaintiff must show that (1) the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) the official actually drew that inference. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Accordingly, deliberate indifference is a high standard requiring more than "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice[.]" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); *see also Thompson*, 245 F.3d at 458–59 ("[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly

negligent response to a substantial risk of serious harm.") Instead, a prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

Defendants maintain that plaintiff cannot make this showing, because jail officials responded and provided treatment after each new report of symptoms. Namely, they point out that Austin was medically evaluated after each report of new symptoms and that his disagreement with the treatment that was provided falls short of showing wanton disregard for serious medical needs. Austin maintains, however, that he had signs of a serious head injury that should have necessitated an immediate medical response and that defendants' failure to provide same creates at least an issue of fact as to their deliberate indifference.

In *Dyer v. Houston*, the Fifth Circuit recently affirmed dismissal of deliberate indifference claims against paramedics based on their failure to provide additional care, such as transport to a hospital or further monitoring, despite their knowledge of a pretrial detainee's head injury and LSD-induced behavior. 964 F.3d at 380–81. In so doing, the court noted "with particular salience here, we have long held that 'the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment,' which fails to give rise to a deliberate-indifference claim." *Id.* at 381 (quoting *Gobert*, 463 F.3d at 346). The following year, the court distinguished the matter in *Kelson v. Clark* and found that plaintiff had sufficiently stated a claim of deliberate indifference based on paramedics' failure to "treat[] or even evaluat[e]" his visible head injuries. 1 F.4th 411, 419 (5th Cir. 2021).

This matter fits the mold of *Dyer* rather than *Kelson*. Here defendants provided evaluation and treatment in the immediate aftermath of Austin's injury, upon the report a few hours later that he had vomited blood, and finally the following morning, after his fellow inmates reported the deterioration of his condition. There is insufficient evidence, *infra*, to determine whether they were negligent with this response. Under the precedents above, however, any errors fall short of establishing that defendants knowingly disregarded the signs of a serious and worsening head injury. Accordingly, summary judgment will be granted as to the claims raised under 42 U.S.C. § 1983 against all defendants.

### B. Tort Claims

It appears Austin has also raised a claim of negligence against defendants. Doc. 1, att. 5, ¶¶ 5–6, 11. Under Louisiana law, a jailer has an obligation to provide adequate and reasonable medical services for prisoners. *E.g.*, *Jacoby v. State*, 434 So.2d 570, 573 (La. Ct. App. 1st Cir. 1983). Additionally, an employer is vicariously liable for the negligent acts committed by employees acting in the course and scope of their employment. *Zeitoun v. City of New Orleans*, 81 So.3d 66, 75 (La. Ct. App. 4th Cir. 2011). While defendants seek dismissal of all claims raised against them, neither side has argued the standard applicable to a negligence claim. Defendants have also raised no other defense to such a claim in their motion. Based on the record, which consists entirely of medical records from the jail, the court cannot determine the extent to which a standard of care was breached with Austin's treatment. Accordingly, Austin's claims of negligence survive this motion.

## IV.
### Conclusion

For the reasons stated above, Motion for Summary Judgment [doc. 37] will be **GRANTED** and the claims raised against all defendants under 42 U.S.C. § 1983 will be **DISMISSED WITH PREJUDICE**. Plaintiff's claims under Louisiana negligence law survive this motion.

**THUS DONE AND SIGNED** in Chambers on the 28th day of October, 2022.

*[signature]*
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE